UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MATTHEW J. PEONE,

                        Plaintiff,                  12-CV-6012 CJS

     -v-

COUNTY OF ONTARIO,

                        Defendant.

_____

APPEARANCES

For Plaintiff:                  Lawrence J. Andolina, Esq.
                                Allison Marley, Esq.
                                Trevett, Cristo, Salzer & Andolina, P.C.
                                2 State Street, Suite 1000
                                Rochester, New York 14614

For Defendant:            Kristen J. Thorsness, Esq.
                                Ontario County Attorney
                                27 North Main Street, 4th Floor
                                Canandaigua, New York 14424

INTRODUCTION

     This is an action for employment discrimination. Now before the Court is Defendant's motion to dismiss the complaint. (Docket No. [#7]). The application is granted.

BACKGROUND

     The following facts are taken from Matthew Peone's ("Peone") Complaint (Docket No. [#1]) in this action, and from the two union grievance complaints that Peone maintains were "protected speech" under the First Amendment. In that regard,

> [when] considering a motion under Fed.R.Civ.P. 12(b)(6) to dismiss a complaint for failure to state a claim on which relief can be granted, the district court is normally required to look only to the allegations on the face of the complaint. If, on such a motion, matters outside the pleading are presented to

and not excluded by the court, the court should normally treat the motion as one for summary judgment pursuant to Fed.R.Civ.P. 56. In any event, a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact.

In certain circumstances, the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6). Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered. In addition, even if not attached or incorporated by reference, a document upon which the complaint solely relies and which is integral to the complaint may be considered by the court in ruling on such a motion.

*Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir.2007) (citations and internal quotation marks omitted). In addition to the Complaint, the Court considers the two aforementioned grievance complaints, since Peone described them in the Complaint, and since they are integral to his First Amendment retaliation claim. *See*, DeSmith Decl. Ex. 24 (July 14, 2010 grievance) and Thorsness Decl. Ex. 10 (August 23, 2010 grievance). The Court has also considered the transcript of Peone's examination conducted pursuant to New York General Municipal Law § 50-h. In general, the Court would not consider a 50-h hearing transcript on a 12(b)(6) motion.[1] However, it is permissible to consider a 50-h hearing transcript where, as here, the Complaint refers to the hearing, the hearing transcript was available to all parties, and all parties relied on portions of the hearing transcript in connection with the

---

[1]*See, e.g., Hazan v. City of New York*, No. 98 Civ. 1716(LAP), 1999 WL 493352 at *7 (S.D.N.Y. Jul. 12, 1999) ("I question the propriety of reviewing the transcript of the [50-h] hearing on a Rule 12(b)(6) motion. Although plaintiff does make brief reference to the hearing in the Complaint, reviewing the hearing transcript in and of itself seems an exercise that is better suited for a motion for summary judgment under Rule 56.").

subject motion to dismiss.[2] *See, Dellate v. Great Neck Union Free School Dist.*, No. CV 09–2567(AKT), 2010 WL 3924863 at *4 (E.D.N.Y. Sep. 30, 2010) ("In light of the fact that, at the time the motions to dismiss were filed, the transcript of the 50–h hearing was available and known to all parties, and that both parties here are relying upon portions of the transcript to support their respective arguments, the transcript may be considered by the Court."), *affirmed,* 448 Fed.Appx. 164 (2d Cir. Jan. 20, 2012).[3]

In 1996, Peone was hired by the Ontario County Sheriff as a police officer. During the first few years of his employment, Peone "was given choice assignments and sent to special training schools." Complaint ¶ 13. Peone, who holds a black belt in the martial art Hapkido, worked as a "defensive tactics instructor" at the police academy, and also worked as an evidence technician for the County's Special Weapons and Tactics ("SWAT") team. *Id.*; *see also*, 50-h hearing (2/17/11) at p. 27.

In August 1999, in the late evening, Peone was between shifts working as a police officer at the Watkins Glen Race Track when he visited the Ontario County Undersheriff, defendant David Tillman ("Tillman"), at Tillman's campsite adjacent to the race track. Peone and Tillman consumed alcoholic beverages, and Tillman, who was "very intoxicated," taunted Peone for thinking that he was "tough," to which Peone responded by suggesting that they engage in a "slap boxing" match. Instead of boxing, Tillman tackled Peone and pinned his arms. Tillman then ground his "groin" against Peone's leg and asked, "How do

---

[2]*See*, affidavit of Plaintiff's counsel, Allison Marley (Docket No. [#12-1]) at ¶ ¶ 3-4, submitting 50-h hearing transcript in opposition to both Defendants' application to dismiss and their alternative request for summary judgment.

[3]The Court does not believe that consideration of the 50-h hearing transcript is necessary to its decision herein, but the transcript does help to explain certain allegations in the Complaint.

you like that?" Peone wrestled himself free and left the campsite a short time later. Peone contends that he thought Tillman's behavior was strange, but he did not initially consider the incident sexual in nature. *See*, 50-h hearing (2/17/11) at p. 29. Nevertheless, Peone told several persons about the incident, and one or more of them apparently reported Peone's comments back to Tillman. Subsequently, Peone maintains, Tillman disliked him and engaged in harassment against him.

The alleged harassment took various forms, and in that regard, the Complaint sets forth a litany of employment related grievances that accrued over a period of ten years. The following portions of the Complaint serve to illustrate the overall nature of the alleged harassment by Tillman:

> 18. In December, 2001, Mr. Peone broke his leg while in the line of duty and was out of work for four months. During this time, Mr. Peone collected Worker's Compensation benefits. Also, during this time, defendant Tillman contacted Mr. Peone by telephone asking about the duration of his leave and advised him that he had decided to eliminate his shift (7:00 p.m. to 3:00 a.m.).
>
> 19. Upon information and belief, defendant Tillman was aware that Mr. Peone was going through a divorce and that eliminating that shift would greatly impact his ability to parent. When Mr. Peone originally agreed to work this later shift, defendant Tillman had promised this would not happen, knowing that Mr. Peone would have to make arrangements for at-home daycare.
>
> 20. Then, sometime in 2002, defendant Tilman advised Mr. Peone of supposed poor reviews he allegedly received from police cadets for his teaching style and berated Mr. Peone for it. Mr. Peone has been denied the right to review the alleged poor reviews and was not utilized as a police instructor after that.
>
> 21. In November, 2003, Mr. Peone broke a finger while in the line of duty. Upon information and belief, when Mr. Peone returned to work with a note from his doctor that he needed to avoid activities that may result in re-injuring

> his finger, defendant Tillman, through a third-party, indicated that the doctor's note was insufficient and that he needed one which eliminated the doctor's language. When Mr. Peone returned to work, defendant Tillman mocked the injury stating, "It was just a finger."

Complaint ¶¶ 18-21. Although most of the incidents might appear to be discrete, unrelated occurrences, Peone contends that they were part of a concerted effort by Tillman to retaliate against him, based on his Tillman's dislike for Peone resulting from the 1999 wrestling incident. *See*, 50-h hearing (2/17/11) at pp. 41-42 ("Q. What do you think is the motivation behind that kind of treatment? . . . A. Because Dave Tilman does not like me. Q. So you think Dave Tillman is directing other people to harass you? A. Yes. Q. Because he doesn't like you? A. Yeah. Q. Why do you think he doesn't like you? . . . A. I can find no other reason other than this incident and because people have joked about it and it has gotten back to him."); see also, *id*. at pp. 43-44, 81-82, 93, 102, 109, 120, 124-125, 135, 148, 152, 154 (Generally reiterating that Tillman harassed and retaliated against Peone because he did not like Peone following the 1999 incident).

To illustrate Tillman's alleged personal dislike for Peone, the Complaint alleges that, after Peone was elected President of his union bargaining unit, he and Tillman continued to clash, and Tillman suggested that Peone should resign as union President, even though Tillman had "gotten along fine" with the previous union President. *See, id*. at p. 125 ("He got along just fine with the last union President and the one before him and for some reason he has an awful dislike of me.").

In addition to the instances of alleged harassment described above, Peone contends that he was passed over for several promotions, for which he was more qualified than the candidates who were promoted. *See, e.g.*, Complaint ¶ 27 (Peone alleges that he was

5

passed over for promotion seven times); *see also id*. at ¶ 32 (Peone alleges that he was "passed over" for five School Resource Officer positions). According to Peone, Tillman told someone at the Sheriff's Office that "a piece of office furniture had a better chance of being promoted than Mr. Peone." *Id*. at ¶ 28. However, in 2005 Peone was hired as a School Resource Office, and in 2007 he was "promoted as an Investigator." *Id*. at ¶ ¶ 35, 38. Peone contends, though, that after being promoted, Tillman suggested that he had only received the promotion because Peone had filed an Improper Labor Practice complaint ("ILP"). *Id*. at ¶ 38.

In 2009, defendant Brad Falkey ("Falkey") was promoted to Lieutenant. Peone alleges that Tillman and Falkey are friends, and that Falkey harassed him in various ways. For example, Peone alleges that Falkey assigned him to drive an "unsafe police vehicle." Complaint ¶ 45. Peone further alleges that Falkey removed him as the Sheriff's liaison with the National Guard on a joint drug enforcement operation, and took over that role for himself. *Id*. at ¶ ¶ 63-65.

In Peone's role as union President, he filed contract grievances on behalf of himself and other employees. For example, on July 14, 2010, Peone filed a complaint with the Sheriff against Falkey, with the "unanimous approval by the Executive Board of the OCSO [Ontario County Sheriff's Office] Road Patrol Unit." Complaint ¶ 47. The grievance complained that Falkey had lost department equipment, micro-managed the road patrol deputies, and "failed to provide the training, equipment, motivation and direction necessary

to run the Criminal Investigations Division." DeSmith Decl. Ex. 24 at pp. 4-5.[4] The complaint also alleged that Falkey had used excessive force against an arrestee in July 2010, though Peone did not personally witness the alleged incident.

On August 23, 2010, Peone, again in his capacity as union President, and with the "unanimous approval of the Executive Board of the OCSO [Ontario County Sheriff's Office] Road Patrol Unit," filed another complaint with the Sheriff against Falkey, based on "additional information which had been brought to Mr. Peone's attention after his July 14, 2010 complaint." *Id*. at ¶ 50 ("[I]t was made against defendant Falkey and again . . . alleged criminal conduct and departmental violations."); see also, Thorness Decl. Ex 10 (The August 23, 2010 complaint). As part of that Complaint, Peone alleged, based on statements related to him by another officer, that, a year earlier, Falkey had used excessive force against a female arrestee, Krystal Laurie ("Laurie") and had committed "other specific departmental violations." *Id*. at ¶ 48.[5]

With regard to the allegation of excessive force against Laurie, Peone conducted his own investigation by contacting Laurie on Facebook. Peone states that he conducted such investigation because he was a police officer investigating a possible crime:

> Q. Okay. [Referring to a booking photograph of Laurie and quotes from her that Peone later turned over to the FBI and Ontario County District Attorney]:

---

[4] *See also, id.* ("Lt. Falkey subjected a subordinate to a tirade of profanity and extended his middle finger in the employee's face several times. . . . Lt. Falkey routinely displays an ill tempered demeanor . . . . In March of 2010 Lt. Falkey removed a Global Positioning System electronic surveillance device from the Special Investigations Unit [and then lost it]. . . . . Because of the personal mismanagement of Lt. Falkey's time, he has failed to provide the training, equipment, motivation and direction necessary to run the Criminal Investigations Division.").

[5] *See also*, Thorsness Decl. Ex. 10 (Alleging that Falkey referred to a county employee as a "fat bitch"; also alleging that Falkey "became verbally belligerent to a CSEA secretary while on the telephone).

7

> This text underneath the photograph, did you get that off of the Sheriff's Office computer system?
>
> A. No.
>
> Q. Where did you get that?
>
> A. Off of a conversation I had with Krystal Laurie on Facebook.
>
> Q. When did you have that conversation with her on Facebook?
>
> A. It was in August I believe of 2010.
>
> Q. Did you initiate contact with her?
>
> A. Yes.
>
> *Q. Why did you do that?*
>
> *A. I'm a police officer and I had been advised a crime had been committed and I wanted to find out if it was true or not.*
>
> Q. How had you been informed that a crime had been committed?
>
> A. That particular one?
>
> Q. Yes.
>
> A. Todd Ford (a Sheriff's Office employee) told me.

50-h Transcript at p. 180 (emphasis added). Peone alleges that after he filed the complaint against Falkey, Tillman claimed to have conducted an investigation, but did not share his findings.

Thereafter, "as a result of nothing being done with regard to the union's complaints," Peone took his complaints directly to the Ontario County District Attorney, Michael Tantillo

8

("Tantillo"). Peone alleges that initially, Tantillo "was very eager to look into these allegations; however, when he discovered who the alleged individuals were, including defendant Falkey, no action was taken." Complaint ¶ 59. Later, although it is not expressly alleged in the Complaint, Peone apparently took the union's complaints to the FBI.

Peone alleges that after he filed the complaints against Falkey, he suffered several instances of retaliation. *See*, Complaint ¶ 51. For example, Peone alleges that the Sheriff's Office declined to buy him a new police car, even though his then-current vehicle had transmission problems. *Id*. at ¶¶ 52-55; *see also, id*. at ¶ 66 (Deputy Chief DeSmith ordered Peone to leave his police vehicle at the Sheriff's office while Peone was on vacation, while allowing other officers to keep their vehicles at their homes); *id*. at ¶ 61 (Someone failed to include overtime pay in one of Peone's paychecks); *id*. at ¶ 56 (Someone damaged a silver ornament belonging to Peone); *id*. at ¶ 58 (Someone went through Peone's desk); *id*. at ¶ 88 (Denied opportunity to earn overtime on a particular investigation); *id*. at ¶ 89 (Denied the opportunity to switch shifts so that he could attend a union meeting).

In or about March 2011, Peone took a leave of absence from work for "stress related reasons." Complaint ¶ 92. After six months of "stress leave," Peone "chose to retire from his position as an Investigator with the OCSO instead of returning to a hostile work environment." *Id*. at ¶ 94.

On January 5, 2012, Peone commenced this action. The Complaint purports to state two causes of action. The first is entitled "First Cause of Action For Retaliation Under Federal Law," and the second is entitled "Second Cause of Action - Retaliation Under State Law." The federal claim references "42 U.S.C. §§ 1981, 1981a, 1983 and 2000e et seq,"

as well as "the First, Fifth, and Fourteenth Amendments of the Constitution." Specifically as to a First Amendment claim, the Complaint states that Defendants violated Peone's "right to petition." Complaint ¶ 99. The state-law claim references New York Executive Law § 296.

Defendants subsequently filed the subject motion [#7] to dismiss for failure to state a claim, or in the alternative, for summary judgment. Defendants contend, *inter alia*, that the Complaint fails to explain any basis for claims relating to § 1981 or the Fifth and Fourteenth Amendments; that the Title VII retaliation claim fails to allege that Peone engaged in protected activity; and that the First Amendment claim fails to allege that Peone engaged in protected speech. On February 14, 2013, counsel for the parties appeared before the undersigned for oral argument.

DISCUSSION

Defendant has moved to dismiss the complaint for failure to state a claim, and the standard for such motions is well settled:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim

rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint,[6] that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).

<u>Title VII Claim</u>[7]

Peone alleges that he suffered retaliation following the wrestling incident with Tillman. Early in the Complaint, Peone refers to the incident as an "altercation," but later in the Complaint he characterizes that incident as "Tillman's sexual advances." [sic]   Title VII

---

[6]The Court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), cert. den. 531 U.S. 1052, 121 S.Ct. 657 (2000).

[7]Peone cannot assert Title VII claims against the individual defendants. *See, Ziegler v. Adams*, 316 Fed.Appx. 52, 52 (2d Cir. Mar. 20, 2009)  ("[I]ndividuals with supervisory control over a plaintiff are not subject to personal liability under Title VII.").

11

prohibits, *inter alia*, discrimination "because of sex." *See, Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118 S.Ct. 998 (1998). In that regard, the Supreme Court emphasized that "ordinary socializing in the workplace — such as male-on-male horseplay . . . [should not be mistaken] for discriminatory conditions of employment." *Oncale*, 118 S.Ct. at 1003; *see also, id*. ("Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.").

In the instant case, Peone alleges that his superior, Tillman, wrestled him to the ground, and, "grinding" his "pelvis" against Peone's leg, said "How do you like that?" Complaint ¶ 15. Several facts in the Complaint are highly significant to establish context. First, the incident took place outside of work, at a "campgrounds of the local race track in Watkins Glen, New York," while Peone and Tillman, who was "very intoxicated," were "slap boxing." *Id*. at ¶ 14. Second, Tillman made no express sexual reference. And third, Peone is a police officer, and more specifically, a member of the County SWAT team and a "defensive tactics instructor at the police academy." *Id*. at ¶ 13. This incident of horseplay between two male police officers at a social event outside of work, during a "slap boxing" match, where the alleged "victim" is a police academy "defensive tactics instructor," cannot plausibly be considered employment discrimination "because of sex."

Nevertheless, Plaintiff is asserting a Title VII retaliation claim,[8] and to establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Jute v. Hamilton Sunstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) ( *quoting McMenemy v. City of Rochester*, 241 F.3d 279, 282–83 (2d Cir.2001)). Of course, a Title VII plaintiff is not required to plead a prima facie case, but he must plead a plausible claim.

It is well settled that "[t]he term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir.2000). In deciding whether a particular activity amounts to "protected activity," "the employment practices opposed by the plaintiff need not have actually amounted to a violation of Title VII. Rather, the plaintiff must have had a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *McMenemy v. City of Rochester*, 241 F.3d at 283. "[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's [complaint] was directed at conduct prohibited by Title VII." *Galdieri–Ambrosini v. National Realty & Development Corp.*, 136 F.3d 276, 292 (2d Cir.1998).

---

[8]Peone's Memo of Law at p. 17 references "*harassment and* retaliatory conduct." However, the Title VII claim is clearly captioned and pleaded solely as a retaliation claim. There is no allegation of quid pro quo, disparate treatment or hostile environment sex harassment in the Complaint. At oral argument, Plaintiff's counsel initially argued that the Complaint does contain a hostile work environment claim, but when asked by the Court to find such claim in the Complaint she admitted that there was no such claim.

In this case, Peone's retaliation claim is not plausible because, even assuming, *arguendo*, that he actually believed that the wrestling incident with Tillman was sexual harassment covered by Title VII, he never complained to the County about the incident as such. Consequently, the County was not on notice of protected activity under Title VII.[9] Furthermore, even if Peone had complained about the incident to his employer, the Complaint fails to plausibly allege any causal connection between such protected activity and the actions that he characterizes as subsequent retaliation during the ensuing ten years. Accordingly, the Title VII claim is dismissed.

Section 1983 First Amendment Retaliation Claim

Peone is a public employee who contends that Defendants retaliated against him "for the exercise, the attempted exercise, or as a result of: . . . [his] [r]ight to petition, in violation of the First Amendment." Complaint ¶ 99.

> To prove that a public employer unlawfully retaliated against an employee for their speech in violation of the First Amendment, the plaintiff must show that (1) the speech at issue was "made as a citizen on matters of public concern rather than as an employee on matters of personal interest," *Grillo v. N . Y.C. Transit Auth.*, 291 F.3d 231, 235 (2d Cir.2002) (per curiam); (2) he or she suffered an adverse employment action, *Diesel v. Town of Lewisboro*, 232 F.3d 92, 107 (2d Cir.2000); and (3) "the speech was at least a substantial or motivating factor in the [adverse employment action]," *Sheppard v. Beerman*, 317 F.3d 351, 355 (2d Cir.2003) (internal quotation marks omitted). "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." *Lewis v. Cowen*, 165 F.3d 154, 163 (2d Cir.1999).

---

[9]In addition to the fact that the Complaint contains no allegation that Peone complained about the incident, Peone admitted at the 50-h hearing that he never complained to anyone about it, until approximately ten years later, when he vaguely told Povero, "there was more going on with his Undersheriff than he realized." 50-h Transcript at pp. 32-33.

*Garcia v. Hartford Police Dept.*, — F.3d — , 2013 WL 309981 at *8 (2d Cir. Jan. 28, 2013). Moreover, the First Amendment does not allow public employees to "constitutionalize the employee grievance," and "when public employees make statements pursuant to their official duties, [they] are not speaking as citizens for First Amendment purposes," "even when such speech regards a matter of public concern." *Anemone v. Metropolitan Transportation Auth.*, 629 F.3d 97, 115-116 (2d Cir. 2011) (*citing Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951 (2006), other citations omitted).

In this action, the Complaint indicates that Peone was speaking as a police officer, not as a citizen. The alleged "protected speech" consists of employment grievances against Falkey, that Peone filed as President of the Union, first with the Sheriff, and later with the District Attorney.[10] However, such complaints are not actionable as "protected speech," since Peone made them in furtherance of his duties as a police officer. In this regard, "[t]he objective inquiry into whether a public employee spoke pursuant to his or her official duties is a practical one." *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 202 (2d Cir. 2010) (citation omitted).[11] Moreover, speech is "pursuant to official duties" when it is "in furtherance of such duties," even if it is not required as part of the job. *Id*. (citation omitted). In *Weintraub*, the Second Circuit held that an employment grievance filed by a school teacher, who was upset that the school Principal failed to take disciplinary action against a student who threw a book

---

[10]The Complaint refers to other employment-related grievances that Peone filed over the years. See, Complaint ¶ ¶ 26, 29, 31, 37, 41, 84. However, the Complaint alleges only that Peone was retaliated against "as a result of" filing of the July 14, 2010 grievance complaint. *See*, Complaint ¶ 51.

[11]*See also, Ross v. Breslin*, 693 F.3d 300, 306 (2d Cir. 2012) ("The inquiry into whether a public employee is speaking pursuant to her official duties is not susceptible to a brighline rule. Courts must examine the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two. Other contextual factors, such as whether the complaint was also conveyed to the public, may properly influence a court's decision.") (citations omitted).

at the teacher, "was pursuant to his official duties because it was part-and-parcel of his concerns about his ability to properly execute his duties as a public school teacher - namely, to maintain classroom discipline, which is an indispensable prerequisite to effective teaching and classroom learning." *Id*. at 203 (citations and internal quotation marks omitted). The Second Circuit's finding on that point was "further supported by the fact that [the teacher's] speech ultimately took the form of an employee grievance, for which there is no relevant citizen analogue." *Id*. Similarly, in *Ross v. Breslin*, 693 F.3d 300, 306 (2d Cir. 2012), the Second Circuit held that a school payroll clerk's complaints to the School Superintendent, and later to the School Board, about suspected financial malfeasance by other employees, were not protected speech, since they were "part and parcel of her official responsibilities."

In the instant case, the employment grievances that Peone filed in July 2010 and August 2010, for which he claims that he suffered retaliation (See, Complaint ¶ 51) similarly pertained to the performance of his official responsibilities as a police officer. Specifically, Peone complained, on behalf of himself and his fellow road patrol officers, that Falkey was interfering with their ability to do their jobs, in various ways, and that Falkey had also broken the law[12] in at least two instances, by assaulting arrestees. In the context of Peone's employment, such complaints are not protected speech. *See, Matthews v. Lynch*, 483 Fed.Appx. 624, 2012 WL 1873657 (2d Cir. May 24, 2012) (Police officer employed in Internal Affairs unit who reported illegal police conduct to Connecticut Attorney General spoke pursuant to his official employment duties and not as a citizen); *see also, Carter v,*

---

[12]*See, Matthews v. Lynch*, No. 3:07–cv–739 (WWE), 2011 WL 1363783 at *4 (D.Conn. Apr. 11, 2011) ("[I]nvestigating and reporting crime are the core functions of a law enforcement officer.") (citation and quotation marks omitted).

16

*Incorporated Village of Ocean Beach*, 415 Fed.Appx. 290, 293, 2011 WL 924471 at *2 (2d Cir. Mar. 18, 2011) ("Plaintiffs' allegations establish no more than that they reported what they believed to be misconduct by a supervisor up the chain of command—misconduct they knew of only by virtue of their jobs as police officers and which they reported as part-and-parcel of their concerns about their ability to properly execute their duties.") (citation and internal quotation marks omitted); *Platt v. Incorporated Village of Southampton*, 391 Fed.Appx. 62, 63-64, 2010 WL 3393738 at *1 (2d Cir. Aug. 30, 2010) (Police officer who complained to village trustee about improper relationship between a male police lieutenant and a female police officer spoke in his capacity as a police officer: "We cannot say that a police officer speaking to a public official about his concerns over public safety issues is speaking in his capacity as a citizen, as opposed to his capacity as a police officer.").

Moreover, the fact that Peone later took his complaints to the District Attorney and FBI does not transform the complaints into protected speech. *See, Anemone*, 629 F.3d at 116 ("When a government employee concededly engages in speech pursuant to his official duties, the fact that he persists in such speech after a supervisor has told him to stop does not, without more, transform his speech into protected speech made as a private citizen."); *see also, Ross v. Breslin*, 693 F.3d at 307 ("Taking a complaint up the chain of command to find someone who will take it seriously does not, without more, transform her speech into protected speech made as a private citizen.").

Accordingly, the First Amendment claim is dismissed.

<u>Section 1981 Claim</u>

The Complaint alleges that Plaintiff was retaliated against in violation of 42 U.S.C. § 1981. *See*, Complaint [#1] at ¶ 97. However, "[t]o establish a claim under 42 U.S.C. § 1981,

17

plaintiff must show that (1) she is a member of a racial minority group, (2) [Defendant] intended to discriminate against her on the basis of race, and (3) this discrimination concerned one of the activities enumerated in 42 U.S.C. § 1981 . . . which include the rights to make and enforce contracts, to sue, and the right 'to the full and equal benefit of all laws and proceedings for the security of persons and property,' 42 U.S.C. § 1981." *Jenkins v. NYC Transit Auth.*, 201 Fed.Appx. 44, 45, 2006 WL 2990242 at *1 (2d Cir. Oct. 18, 2006).

The subject Complaint contains absolutely no factual allegations concerning Peone's race, ethnicity or national origin, and at oral argument Plaintiff's counsel could not provide any explanation for the inclusion of such claim. Therefore such claim is dismissed. *See, Zemsky v. City of New York*, 821 F.2d 148, 150 (2d Cir. 1987) ("A plaintiff states a viable cause of action under Section 1981 or 1982 only by alleging a deprivation of his rights on account of his race, ancestry, or ethnic characteristics.").

<u>Fifth and Fourteenth Amendment Claim</u>

Peone's Complaint [#1], under the heading "First Cause of Action for Retaliation Under Federal Law," primarily refers to the First Amendment, but also alludes to him being deprived of rights secured by the "Fifth and Fourteenth Amendments." *Id*. at ¶ 97. However, the Complaint does not allege a denial of due process, nor does it otherwise explain the basis for any claim under the Fifth or Fourteenth Amendments.[13] In moving to dismiss, Defendants contend: "Nor has Peone stated in what way his Fifth or Fourteenth Amendment rights have been violated, and these allegations appear to be surplusage." Defense Memo

---

[13]*See, Gray v. City of New York*, No. 10–CV–3039 (SLT)(CLP), 2012 WL 947802 at *11 (E.D.N.Y. Mar. 20, 2012) ("[W]hile this Court assumes that plaintiff's references to violations of the Fifth and Fourteenth Amendments pertain to the due process clause, plaintiff should specify the clause which was allegedly violated.").

[#7-2] at p. 4.[14] Despite this challenge by Defendants, Peone's responding memorandum of law does not mention a Fifth or Fourteenth Amendment claim, and therefore fails to clarify the Complaint or to oppose that aspect of Defendants' motion to dismiss. Accordingly, to the extent that Peone is attempting to assert claims under the Fifth and Fourteenth Amendments,[15] they are are dismissed. *See, Rodriguez v. Boursiquot*, No. 09 Civ. 0802(PAC)(KNF), 2010 WL 985187 at * 5 n. 7 (S.D.N.Y. Mar. 17, 2010) ("[V]ague and passing references to 'equal protection,' 'procedural due process,' the Fourteenth Amendment, and various sections of the United States Code" failed to state a claim); *Balaber-Strauss v. Town/Village of Harrison*, 405 F.Supp.2d 427, 434-435 (S.D.N.Y. 2005) ("[S]ingle reference to deprivation of their Fifth and Fourteenth Amendment rights" in complaint with "no allegations supporting these alleged constitutional violations" fails to state a claim).

State Law Claims Are Dismissed

Peone has asserted supplemental-jurisdiction claims under state law. However, the Court is dismissing all of Peone's federal claims over which it has original jurisdiction. Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Peone's state-law claims, and dismisses them without prejudice to him re-filing them in state court. Peone is advised that the statute of limitations governing his state-law claim will be tolled for a period of thirty days, pursuant to 28 U.S.C. § 1367(d). *See, Seabrook v.*

---

[14]As already discussed, the Complaint contains at least one other instance of surplusage, that being the reference to Section 1981.

[15]It may be that "Plaintiff's reference to the Fourteenth Amendment merely refers to the First Amendment's application via its incorporation under the Fourteenth Amendment's Due Process Clause." *Morey v.Somers Cent. School Dist.*, No. 06 Civ. 1877(WCC), 2007 WL 867203 at *13 (S.D.N.Y. Mar. 21, 2007).

*Jacobson*, 153 F.3d 70, 72 (2d Cir.1998) ("Section 1367(d) ensures that the plaintiff whose supplemental state claim is dismissed has at least thirty days after dismissal to refile in state court.").

## CONCLUSION

Defendant's motion [#7] to dismiss the Complaint pursuant to Rule 12(b)(6) is granted, and this action is dismissed. The Clerk of the Court is directed to close this action.

SO ORDERED.

Dated:  February 26, 2013
        Rochester, New York

                                              /s/ Charles J. Siragusa
                                              CHARLES J. SIRAGUSA
                                              United States District Judge